1   Christopher D. Moon, SBN 246622
2   *chris@moonlawapc.com*
    Kevin O. Moon, SBN 246792
3   *kevin@moonlawapc.com*
4   **MOON LAW APC**
    600 West Broadway, Suite 700
5   San Diego, California 92101
6   Telephone: (619) 915-9432
    Facsimile: (650) 618-0478
7
8   *Attorneys for Plaintiff*

9

10              **UNITED STATES DISTRICT COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  LINDSAY PENHALL, on behalf of herself and a class of all others similarly situated, | Case No.: 19-cv-2340-JLS-RBB |
| 15              Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(3) OR TRANSFER UNDER § 1404(a)** |
| 16      v. | |
| 17  YOUNG LIVING ESSENTIAL OILS, LC, | Date:      March 19, 2020 |
| 19              Defendant. | Time:      1:30 p.m. |
| 20 | Place:     Courtroom 4D |
| | Judge:    Hon. Janis L. Sammartino |

21
22
23
24
25
26
27
28

Type text here

1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   LEGAL STANDARD ......................................................................... 2

III.  ARGUMENT ..................................................................................... 3

    A.   Defendant Has Failed to Establish that Plaintiff Was Bound by the Forum-Selection Clauses in the Agreement Identified in Defendant's Motion. ...................................................... 3

    B.   Because the Agreement's Forum-Selection Clauses and Arbitration Clause Irreconcilably Conflict, There Was No Meeting of the Minds, Rendering the Clauses Unenforceable. ........... 4

        1.   Forum-Selection Clause #1 ("FSC #1") ........................... 4

        2.   Arbitration Clause and Forum-Selection Clause #2 ("FSC #2") ...................................................................... 4

        3.   Forum-Selection Clause #3 ("FSC #3") ........................... 6

    C.   Even if the Court Were to Determine that the Forum-Selection Clauses Are Enforceable, They Are Permissive, and Therefore Venue in This District Is Proper. .......................................... 7

    D.   The Plain Language of the Forum-Selection Clauses Also Demonstrate They Are Permissive, Rather than Mandatory. ............. 12

    E.   The Forum-Selection Clauses Do Not Encompass Plaintiff's Claims. .......................................................................... 13

    F.   The Court Should Deny Defendant's Motion to Transfer Under Section 1404(a) Because the Balance of Factors Weighs in Favor of Keeping this Action in California. ..................................... 15

        1.   The Private Interest Factors Favor California ................ 16

              i.   Plaintiff's Choice of Forum Is Entitled to Deference ........................................................ 16

              ii.   The Access to Sources of Proof Factor Is Neutral ............................................................ 17

              iii.  The Witness Convenience Factors Favor California ........................................................ 18

-i-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv.     The Location of the Agreements Factor Favors California ................................ 19

v.      The Governing Law Factor Favors California ............................................. 19

vi.     The Forum Contacts Factors Favor California ............................................. 20

vii.    The Litigation Costs Factor Favors California ............................................. 21

2.      The Public Interest Factors Favor California ................ 21

i.      The Court Congestion Factor Weighs in Favor of Keeping This Action in California ........ 21

ii.     The Local Interest and Burden on Citizen Factors Favors California.................................... 22

iii.    The Governing Law Factor Favors California ............................................. 22

IV.     CONCLUSION ............................................................... 24

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

# TABLE OF AUTHORITIES

**Cases**

*Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*,
   2010 WL 883831 (C.D. Cal. Mar. 5, 2010) ........................................3

*Bohara v. Backus Hosp. Med. Benefit Plan*,
   390 F. Supp. 2d 957 (C.D. Cal. 2005)....................................... 17, 18

*Bristlecone, Inc. v. Smith & Nephew, Inc.*,
   2017 WL 2666763 (N.D. Cal. June 20, 2017) ................................. 11

*BrowserCam* Inc. v. Gomez, Inc.,
   2008 WL 4408053 (N.D. Cal. Sept. 26, 2008)........................... 12, 13

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
   472 F. Supp. 2d 1183 (S.D. Cal. 2007) ...........................................23

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986)............................................... 16, 23

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) .........................................................2

*Escobosa v. Sunbelt Commc'ns Co.*,
   2009 WL 10672058 (S.D. Cal. June 25, 2009) ................17, 18, 22, 23, 24

*Gennock v. Lucas Energy, Inc.*,
   2011 WL 4738320 (E.D. Cal. Oct. 5, 2011) ............................ 8, 11, 12

*Hendricks v. StarKist Co.*,
   2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) .................................21

*Hendrickson v. Octagon Inc*,
   2014 WL 2758750 (N.D. Cal. June 17, 2014) ............................. 8, 12

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) ........................................................2, 8

*In re Ferrero Litig.*,
   768 F. Supp. 2d 1074 (S.D. Cal. 2011) .............................16, 17, 18, 19, 20, 21

*In re Orange, S.A.*,
   818 F.3d 956 (9th Cir. 2016) ........................................................ 14

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000)................................................. 16, 22

*Laxmi Investments, LLC v. Golf USA*,
   193 F.3d 1095 (9th Cir. 1999) .........................................................2

*Local Motion, Inc. v. Niescher*,
   105 F.3d 1278 (9th Cir. 1997)..........................................................2

-iii-

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
  60 F. Supp. 3d 1109 (E.D. Cal. 2014) .................................................... 3

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  2019 WL 6482222 (C.D. Cal. July 8, 2019) .......................................... 17, 18, 19

*O'Shaughnessy v. Young Living Essential Oils, LC.*
  (W.D. Tex. Nov. 27, 2019) ....................................................................... 6

*O'Shaughnessy v. Young Living Essential Oils, LC*,
  2019 WL 5296359 (W.D. Tex. Oct. 18, 2019) .................................... 5, 6, 9

*Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*,
  2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) ...................................... 2, 5

*Patriot Sci. Corp. v. Korodi*,
  2009 WL 10673013 (S.D. Cal. Sept. 10, 2009) .................................... 16, 20

*PC Specialists, Inc. v. Micros Sys., Inc.*,
  2010 WL 11509024 (S.D. Cal. Apr. 27, 2010) .................... 3, 15, 19, 20, 22

*QSR Mgmt., Inc. v. Dunkin Brands, Inc.*,
  2008 WL 2856456 (C.D. Cal. Mar. 3, 2008) ............................................ 8

*Reliance Ins. Co. v. Six Star, Inc.*,
  155 F. Supp. 2d 49 (S.D.N.Y. 2001) ......................................................... 13

*Roling v. E*Trade Sec., LLC*,
  756 F. Supp. 2d 1179 (N.D. Cal. 2010) .................................................... 16

*Rui Chen v. Premier Fin. All., Inc.*,
  2019 WL 6911263 (N.D. Cal. Dec. 19, 2019 .......................................... 18, 19

*Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*,
  2014 WL 12688422 (C.D. Cal. Dec. 18, 2014) ...................................... 11

*State ex rel. Balderas v. Real Estate Law Ctr., P.C.*,
  2019 WL 7372753 (D.N.M. Dec. 31, 2019) ............................................ 11

*Van Slyke v. Capital One Bank*,
  503 F. Supp. 2d 1353 (N.D. Cal. 2007) ................................. 17, 18, 19, 22

*Waste Servs., LLC Red Oak Sanitation, Inc.*,
  2008 WL 11320211 (D. Utah July 25, 2008) .......................................... 13

*WSA Distrib. Inc. v. Youghiogheny Commc'ns Ne. LLC*,
  2011 WL 13356143 (S.D. Cal. May 27, 2011) ...................................... 13

*Yan Guo v. Kyani, Inc.*,
  311 F. Supp. 3d 1130 (C.D. Cal. 2018) .................................................. 14, 15

**Statutes**

28 U.S.C. § 1404(a) ...................................................................... 1, 15, 16

California Business & Professions Code § 17200 ............................ 19, 22

## I.   INTRODUCTION

For years, Defendant Young Living Essential Oils, LC ("Defendant" or "Young Living") has duped hundreds of thousands of consumers with the promise of achieving riches by working as a "distributor" of Defendant's products.   In reality, approximately 97% of consumers, including Plaintiff Lindsay Penhall, have *lost* money working for Defendant's illegal pyramid scheme.

Rather than address the substance of Plaintiff's allegations, Defendant seeks to dismiss this action or transfer it to Salt Lake City, Utah.  However, Defendant's Motion lacks merit as a matter of law for at least the following reasons.

First, Defendant's Motion is based on "two mandatory forum-selection clauses and a binding arbitration clause" contained in two different documents: a "Member Agreement" and Defendant's "Policies and Procedures" ("P&Ps") (collectively, "Agreement"), which Defendant claims—without evidence—that all distributors, including Plaintiff, agreed to upon joining Young Living.  However, Defendant's "Agreement" is nothing more than a patchwork quilt of wholly inconsistent and plainly conflicting provisions.  Indeed, a plain reading of the Agreement's purported forum-selection and arbitration clauses would seemingly require this dispute to be adjudicated in not one, but three—or more—distinct forums.  Indeed, *two federal judges have already determined* the Agreement's forum-selection and arbitration clauses irreconcilably—and fatally—conflict.

Second, even if the Court were to determine that the forum-selection clauses are enforceable, they are permissive, and therefore venue in this District is proper.  Third, the forum-selection clauses do not encompass Plaintiff's claims. Finally, the Court should deny Defendant's Motion to Transfer under Section 1404(a) because the balance of private and public interest factors weighs in favor of keeping this action in California.  In light of the foregoing, and as further demonstrated below, the Court should deny Defendant's Motion in its entirety. //

-1-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

## II.   LEGAL STANDARD

The Ninth Circuit applies federal law to the interpretation and enforcement of forum-selection clauses. *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. 2009). When interpreting a contract under federal law, courts look to "general principles for interpreting contracts." *Id.* (internal quotation marks omitted). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Id.* (internal citations and quotation marks omitted). Written contracts should be read "as a whole" and courts "interpret each part with reference to the whole." *Id.*

"A legally enforceable agreement requires a meeting of the minds[.]" *Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*, 2016 WL 6679682, at *3 (N.D. Cal. Nov. 14, 2016) (internal citations and quotation marks omitted). The "meeting of the minds" requirement applies to a forum-selection clause. *See Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999) (determining that there was no meeting of the minds as to the forum-selection clause). "The presence of an ambiguous material term may indicate that no meeting of the minds occurred when the document was signed." *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997). "[A] contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Doe 1*, 552 F.3d at 1081 (internal citation and quotation marks omitted).

A "fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language ***against*** the drafter of the contract." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) (emphasis added). "[T]he Court must [also] draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the

non-moving party." *PC Specialists, Inc. v. Micros Sys., Inc.*, 2010 WL 11509024, at *3 (S.D. Cal. Apr. 27, 2010) (internal citations and quotation marks omitted) (Sammartino, J.).

## III.   ARGUMENT

### A.   Defendant Has Failed to Establish that Plaintiff Was Bound by the Forum-Selection Clauses in the Agreement Identified in Defendant's Motion.

As a threshold matter, it is ***Defendant's*** burden to demonstrate that Plaintiff is bound by the Agreement and its attendant venue provisions, which Defendant argues compel this Court to transfer or dismiss Plaintiff's case.   *See Alcatel Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, 2010 WL 883831, at *13 (C.D. Cal. Mar. 5, 2010); *see also Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014).  In this case, Defendant has not even tried.

Rather, Defendant incorrectly contends in its Motion that "***Plaintiff alleges*** Young Living engaged in unlawful conduct ***under an Agreement Plaintiff executed***," which Agreement Defendant defines in Footnote 1 of its Motion as comprising the documents Defendant attached as Exhibits A-C (*i.e.*, Member Agreement, Policies and Procedures, and Compensation Plan).  Motion at p. 1, n.1 (emphasis added).  To be clear, nowhere in the First Amended Complaint—or anywhere else—has Plaintiff asserted any allegations concerning specific Young Living documents she executed.  Nor has Plaintiff asserted any allegations concerning which specific *versions* of those documents she executed.

Even more troubling, Defendant claims in Footnote 1 of its Motion:

> Plaintiff alleges she became a Young Living Member in May 2018.  Based on this allegation, Young Living understands Plaintiff alleges she entered into the version of the Agreement attached hereto as Ex. A, Ex. B. and Ex. C.  If discovery reveals Plaintiff is subject to a different version of the Agreement, Young Living reserves the right to make such an allegation.  For purposes of this motion, however, Young Living takes Plaintiff's allegations as true.

Once again, Plaintiff made no such allegations (other than becoming a Young

Living distributor in May 2018). Rather, in a syllogistic sleight-of-hand, Defendant accepts as true its own proposition that "***Plaintiff alleges*** she entered into the version of the Agreement attached hereto as Ex. A, Ex. B. and Ex. C," which "[f]or purposes of this motion, however, Young Living takes ***Plaintiff's allegations*** as true." *Id.* When this fiction is removed, it is clear that Defendant has presented no evidence demonstrating that Plaintiff was bound by the specific Agreement cited in its Motion, and therefore Defendant has failed to satisfy its burden.

> **B.      Because the Agreement's Forum-Selection Clauses and Arbitration Clause Irreconcilably Conflict, There Was No Meeting of the Minds, Rendering the Clauses Unenforceable.**

Defendant repeatedly portrays two forum-selection clauses and an arbitration clause—which are contained in two different documents—as if they seamlessly and logically integrate. *See, e.g.,* Motion at pp. 1, 6-7. Nothing could be further from the truth. Rather, the Member Agreement and P&Ps are a patchwork quilt of wholly inconsistent and plainly conflicting provisions.

> **1.      Forum-Selection Clause #1 ("FSC #1")**

Section 9 of the Membership Agreement, titled "Jurisdiction and Choice of Law," states in relevant part:

> ***Any legal action concerning the Agreement will be brought in the state and federal courts*** located in Salt Lake City, Utah. Notwithstanding the foregoing, if applicant resides in Louisiana, applicant may bring an action against YL with jurisdiction and venue as provided by Louisiana law.

Motion, Ex. A at § 9 (emphasis added).

> **2.      Arbitration Clause and Forum-Selection Clause #2 ("FSC #2")**

Contrast FSC #1 with the Arbitration Clause contained in the P&Ps: "***[A]ny controversy or claim arising out of or relating to the Agreement, or the breach thereof, will be settled by arbitration.   The parties waive all rights to trial by jury or to any court***." Motion, Ex. B at § 13.2.2. Further, "[a]ll arbitration

---

-4-

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

proceedings will be held in Salt Lake City, Utah."[1]  *Id.*  A plain reading of FSC #1 and the Arbitration Clause demonstrates that they irreconcilably conflict: one clause would send a dispute to state or federal court in Salt Lake City, Utah, and the other clause would require that the exact same dispute be arbitrated. Therefore, as a matter of law, there could not have been a meeting of the minds between the parties.  *See Osprey Partners RSF LLC*, 2016 WL 6679682 at *3.

Importantly, two different federal judges have already determined these exact same clauses in the Agreement fatally conflict.  In April 2019, a former Young Living distributor brought suit against Defendant alleging RICO violations. *See O'Shaughnessy v. Young Living Essential Oils, LC*, 2019 WL 5296359, at *1 (W.D. Tex. Oct. 18, 2019).  In response, Defendant filed a motion to compel arbitration, arguing that the plaintiff must arbitrate her dispute against Defendant in Salt Lake City, Utah, based on the identical Arbitration Clause at issue in the instant case.  *Id.* at 2.  However, pointing to the same forum-selection clause in the Member Agreement at issue here (FSC #1), the plaintiff argued that FSC #1 and the Arbitration Clause directly conflict, and therefore there was no meeting of the minds.  *Id.*

Explaining that "[i]t is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract," the court found that FSC #1 and the Arbitration Clause "***irreconcilably conflict*** and that these conflicting provisions indicate that there was ***no 'meeting of the minds'*** with respect to arbitration in this case."  *Id.* at 4 (internal citation omitted)

//

//

---

[1] Immediately following the Arbitration Clause in the P&Ps is Section 13.2.3, titled "Jurisdiction, Venue, and Choice of Law."  Motion, Ex. B at § 13.2.3.  This section states, "Jurisdiction and venue of any matter not subject to arbitration will reside in any state or federal court located in Salt Lake City, Utah[.]"  *Id.* (hereinafter, "Forum-Selection Clause #2" or "FSC #2").

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1   (emphasis added).[2]   Therefore, the Magistrate Judge recommended that the
2   District Court deny Defendant's motion to compel arbitration.  *Id.* at 5.

3      And that is precisely what the District Court did.  *See O'Shaughnessy v.*
4   *Young Living Essential Oils, LC*, (W.D. Tex. Nov. 27, 2019) (Dkt. 33).
5   Specifically, the District Court found that the Magistrate Judge "properly
6   concluded that the Forum Selection Clause and Arbitration Clause conflict so that
7   they cannot be harmonized."  *Id.*   Accordingly, the court denied Defendant's
8   motion to compel arbitration.  *Id.*[3]

9      Not surprisingly, here, Defendant has changed tactics and instead of seeking
10  to arbitrate the claims, Defendant now attempts to dismiss the case or transfer it to
11  Salt Lake City, Utah pursuant to FSC #1 and FSC #2.   However, Defendant's
12  change in strategy has not altered the undeniable fact that FSC #1, FSC #2, and
13  the Arbitration Clause are plainly "ambiguous" and "irreconcilably conflict" such
14  that there was "no meeting of the minds."  *O'Shaughnessy*, 2019 WL 5296359, at
15  *4.  Indeed, the reasoning in *O'Shaughnessy* applies with equal force to the instant
16  case, and Defendant has presented no argument to the contrary.  Accordingly, FSC
17  #1 and FSC #2 are no more enforceable than the Arbitration Clause.

18          **3.      Forum-Selection Clause #3 ("FSC #3")**

19      In the *O'Shaughnessy* case, it was enough that FSC #1 and the Arbitration
20  Clause conflicted in order to find there was no meeting of the minds.   It appears,
21  however, that neither the parties nor the court in that case considered the
22  Agreement's other forum-selection clause, which renders the Agreement even
23  more ambiguous and hopelessly conflicting.   This third forum-selection clause

24  _____

25  [2] The court also explained that "[t]he conflict between these provisions would not
    leave the Plaintiff with a definite understanding that she agreed to arbitrate all
26  claims arising out of the Member Agreement."  *Id.* at 4.  Further, "Young Living
    drafted ambiguous and conflicting agreements, and cannot now claim the benefit
27  of the doubt.  The reason for this rule is to protect the party who did not choose the
    language from an unintended or unfair result."  *Id.* at 5 (internal citations and
28  quotation marks omitted).
    [3] Defendant has filed an appeal with the Fifth Circuit Court of Appeals.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

(FSC #3) is found at the end of section 13.2.2 of the P&Ps, and states:

> Notwithstanding the foregoing,[4] nothing in these Policies and Procedures will prevent **either party** from applying to and obtaining from **any court having jurisdiction** a writ of attachment, a **temporary injunction**, a preliminary injunction, **a permanent injunction**, or other relief available to safeguard and protect its intellectual property rights and/or to enforce its rights under the nonsolicitation and noncompetition provisions of Section 3.12.

Motion, Ex. B. at § 13.2.2.  Under this provision, Plaintiff is permitted to seek a temporary or permanent injunction in **any court of competent jurisdiction**, including this Court.  *Id.*  And that is precisely what Plaintiff has done.  *See generally*, First Amended Complaint, Dkt. 4 (seeking temporary and permanent injunctive relief).  As relevant here, FSC #3 directly conflicts with FSC #1 and FSC #2, which, as Defendant contends, requires "all disputes" to be brought in state or federal courts in Salt Lake City, Utah.   Motion at p. 1.  For the same reasons, FSC #3 directly conflicts with the Arbitration Clause, which, as Defendant also contends, requires "all disputes" to be settled in binding arbitration.  *Id.*  As a result, FSC #3 further proves there was no meeting of the minds between the parties.[5]

## C.    Even if the Court Were to Determine that the Forum-Selection Clauses Are Enforceable, They Are Permissive, and Therefore Venue in This District Is Proper.

Under federal law, a mandatory forum-selection clause "***clearly*** require[s]

---

[4]  "Foregoing" refers to the Arbitration-related provisions of the P&Ps.

[5]   To the extent Defendant contends that the "permanent injunction" a party may seek is limited to only those necessary to "safeguard and protect its intellectual property rights and/or to enforce its rights under the nonsolicitation and noncompetition provisions of Section 3.12," such a limited construction is undermined by Defendant's decision not to insert a comma after "other relief available."  Otherwise, to read in such a limitation would require the Court to disregard "the 'last antecedent rule' – [which] provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'"  *White v. Cty. of Sacramento*, 31 Cal. 3d 676, 680, 646 P.2d 191 (1982); *see also Lockhart v. United States*, 136 S. Ct. 958, 962-63, 194 L. Ed. 2d 48 (2016). However, even if FSC #3 is construed narrowly, such a construction would still directly conflict with FSC #1, FSC #2, and the Arbitration Clause, demonstrating that there was no meeting of the minds.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

*exclusive* jurisdiction." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir. 1987) (emphasis added).   To be deemed mandatory (or "exclusive"), the language in the clause must require "that the designated courts are the ***only ones which have jurisdiction***." *Id.* at 77-78 (emphasis added).[6] "Therefore, to be mandatory [a forum-selection clause] must be extremely deliberate in selecting a specific and exclusive venue and in indicating that ***all action must be brought solely in that venue, and no other.***" *Hendrickson v. Octagon Inc*, 2014 WL 2758750, at *3 (N.D. Cal. June 17, 2014) (emphasis added).  In contrast, a permissive clause sets forth only "consent" to jurisdiction in a designated forum, but is not "exclusive," *i.e.,* the same subject matter could be litigated in another court.  *Hunt Wesson Foods, Inc.,* 817 F.2d at 77.   "If the language of the forum selection clause is non-mandatory or permissive, the forum selection clause will not preclude suit elsewhere." *Gennock v. Lucas Energy, Inc.*, 2011 WL 4738320, at *3 (E.D. Cal. Oct. 5, 2011).

Importantly, "[u]nder Ninth Circuit law, the court is not empowered to interpret an ambiguous forum selection clause, it must reject it to the extent it does not clearly designate a particular forum as the exclusive venue." *QSR Mgmt., Inc. v. Dunkin Brands, Inc.*, 2008 WL 2856456, at *2 (C.D. Cal. Mar. 3, 2008) (internal citation and quotation marks omitted).  In addition, a "fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language against the drafter of the contract."[7]  *Hunt Wesson Foods, Inc.,* 817 F.2d at 78; *see also Hendrickson*, 2014 WL 2758750, at *2.

Defendant posits that the "Agreement contains two mandatory forum-selection clauses and a binding arbitration clause that combined require (1) **all**

---

[6] *See also Goldschmied v. Brifil*, 2018 WL 6430545, at *7 (C.D. Cal. Oct. 17, 2018) ("To be mandatory, a [forum-selection] clause must contain language that clearly designates a forum as the exclusive one."); *Hendrickson*, 2014 WL 2758750, at *2 (A mandatory forum-selection clause must "limit[] venue exclusively to the selected forum" and "[t]he language must show that the selected forum is the only forum in which the action may be brought.").

[7] The Defendant drafted the Agreement at issue.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1   **disputes** be brought in **Salt Lake City, Utah** and (2) resolved in either binding

2   arbitration or state or federal court." Motion at p. 1 (emphasis in original).

3   However, Defendant never so much as attempts to explain how "**all disputes**" can

4   be simultaneously subject to "binding arbitration" and litigation in "state or

5   federal court." That is because they cannot. Nor does Defendant explain how, as

6   a matter of law, the forum-selection clauses are "mandatory" where "all disputes"

7   are also subject to "binding arbitration." The very assertion itself demonstrates

8   the forum-selection clauses are necessarily permissive.

9          To underscore this point, consider Plaintiff's request for injunctive relief.

10   According to Defendant, FSC #1 requires that Plaintiff seek injunctive relief in

11   state or federal courts located in Salt Lake City, Utah. However, under the

12   Arbitration Clause, Defendant would argue that such relief must be obtained

13   through arbitration, rather than in state or federal court. *O'Shaughnessy*, 2019 WL

14   5296359, at *1. Yet, according to FSC #3, Plaintiff may seek injunctive relief in

15   any court having jurisdiction, including this one. In light of these three (or more)

16   permissible venues it is clear that the Forum-Selection Clauses do not actually

17   mandate exclusive jurisdiction in a particular venue.

18          When faced with similar conflicting provisions, courts have found facially

19   mandatory forum-selection clauses ambiguous and therefore permissive. For

20   example in *Goldschmied v. Brifil*, No. CV 18-7092 PSG (SKX), 2018 WL

21   6430545, at *7 (C.D. Cal. Oct. 17, 2018), the defendant argued that venue was

22   improper because a forum-selection clause in an operating agreement provided that

23   all disputes arising out of the agreement must be litigated in Florida state courts in

24   Palm Beach County. The plaintiff, however, argued that the forum-selection

25   clause should not be enforced because the operating agreement contained other

26   conflicting clauses, rendering it ambiguous on the subject of forum selection. *Id.*

27          In declining to enforce the forum-selection clause, the court noted that the

28   operating agreement contained three provisions relevant to the issue of venue:

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1  The first provision, entitled "Governing Law: Venue", states that "[a]ny
2  action or proceeding seeking to enforce any provision of, or based on any
   right arising out of, this Agreement shall be brought against either of the
3  parties exclusively in the courts of the State of Florida, County of Palm
   Beach." It continues that if any action should be brought in a federal court
4  or any other court outside of Palm Beach County, Florida, the "Agreement
   shall serve as the filing parties' unconditional agreement to transfer said
5  action to a proper state court in Palm Beach County, Florida or to dismiss it
   without prejudice for refiling in such proper court."

6  *Id.* The court then explained that while this first provision appeared to mandate

7  that all actions be brought in Florida state court in Palm Beach County, "other

8  provisions introduce[d] ambiguity into the agreement." *Id.* For example, a

9  provision entitled "Dispute Resolution" provided that "[t]he parties agree to submit

10 all disputes to mediation, unless waived by written agreement of the parties." *Id.*

11 And another provision titled "Specific Performance" provided that:

12     in addition to any other remedy to which the non-breaching party shall be
       entitled, at law or equity, the non-breaching party shall be entitled to
13     ***injunctive relief*** to prevent breaches of the provisions of this Agreement and
       specifically to enforce the terms and provisions hereof in any action
14     instituted in ***any court of the United States or any state thereof having***
       ***subject matter jurisdiction thereof***.
15

16 *Id.* (emphasis added). The court found that the provision of the agreement

17 allowing parties to seek injunctive relief in "any court of the United States or any

18 state thereof having subject matter jurisdiction thereof" created ambiguity as to

19 whether Plaintiff was required to bring her non-monetary claims in Florida state

20 court. *Id.* at 8. As a result, "[b]ecause the Court finds ambiguity in the . . .

21 Operating Agreement as to the proper forum for resolving disputes, it concludes

22 that Plaintiff was not required to bring the Business Claims in Florida state court.

23 Defendant's motion to dismiss these claims for improper venue is denied." *Id.*

24     Similar reasoning is found in *Hendrickson v. Octagon Inc*, No. C 14-01416

25 CRB, 2014 WL 2758750, at *1 (N.D. Cal. June 17, 2014). In that case, defendant

26 Octagon moved to transfer venue to the Eastern District of Virginia pursuant to a

27 forum-selection clause in plaintiffs' employment contracts. *Id.* In denying

28 defendant's motion to transfer, the court explained:

1
2
3
4
5
6

> The [forum-selection clause] contradicts another provision in the same document, which allows Octagon to seek injunctive relief in any forum. Inconsistency in a contract indicates ambiguity. Ambiguity is construed against the drafter. Paragraph 12 of the Agreement reads, "Notwithstanding anything to the contrary in this Agreement, [Octagon] shall be permitted to seek such injunctive relief in any court of law in any jurisdiction." The [forum-selection clause] does not acknowledge or address Paragraph 12. *If Octagon may seek injunctive relief in any forum, the [forum-selection clause] is either permissive, or at the least it is ambiguous, and thus may be interpreted as permissive.*

7
8
9
10

*Id.* at 3 (internal citation omitted) (emphasis added).   As a result, "the Court finds that because the [forum-selection clause] is ambiguous, it is not mandatory, venue in Virginia is not exclusive and the case is properly brought in this district." *Id.* at 4.[8]

11
12
13
14
15
16
17

Here, just as in *Goldschmied* and *Hendrickson,* the parties are permitted to seek injunctive relief in any court having jurisdiction—not just those in Salt Lake City, Utah.   However, the Arbitration Clause at issue in this case injects substantially more ambiguity into the Agreement than that found in *Goldschmied* and *Hendrickson.*   Because ambiguity is construed against the drafter (here, Defendant), the forum-selection clauses are necessarily permissive and Plaintiff's choice of venue is proper.

18
19
20
21
22
23

Also adding to the Agreement's ambiguity is section 10 of the Member Agreement, titled "Miscellaneous," which immediately follows FSC #1.   Motion, Ex. A at § 10.   That section states, "In the event *any court of competent jurisdiction* will declare any portion of the Agreement to be invalid, the remainder of the Agreement will not be invalidated thereby but will remain in full force and effect."[9]  *Id.* (emphasis added).   This section plainly contemplates that "any court

24
25
26
27

[8]   *See also Bristlecone, Inc. v. Smith & Nephew, Inc.,* 2017 WL 2666763, at *4 (N.D. Cal. June 20, 2017); *Sprout Healthy Vending LLC v. Seaga Mfg. Inc.,* 2014 WL 12688422, at *6-7 (C.D. Cal. Dec. 18, 2014); *Gennock,* 2011 WL 4738320, at *5; *State ex rel. Balderas v. Real Estate Law Ctr., P.C.,* 2019 WL 7372753, at *14 (D.N.M. Dec. 31, 2019).

28

[9]   A similar provision is found under section 13 of "Essential Rewards Agreement" in the Member Agreement.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

of competent jurisdiction"—not just those in state and federal courts in Salt Lake City, Utah—will have occasion to construe and adjudicate the Agreement.

Rendering the Agreement even more ambiguous is the clause in FSC #2 that limits its application to "any matter not subject to arbitration."  Motion, Ex. B at § 13.2.3.  But Defendant makes no attempt to specify which matters are ***not*** subject to arbitration. In any event, neither Plaintiff, nor any other distributor, should reasonably be expected to know which disputes are subject to arbitration, as opposed to those that must be litigated in state or federal courts in Salt Lake City, Utah—or elsewhere.[10]

### D.   The Plain Language of the Forum-Selection Clauses Also Demonstrate They Are Permissive, Rather than Mandatory.

As noted, to be mandatory, a forum-selection clause "must be extremely deliberate in selecting a specific and exclusive venue and in indicating that all action must be brought solely in that venue, and no other."  *Hendrickson*, 2014 WL 2758750, at *3.  For example, mandatory forum-selection clauses generally use words such as "exclusive," "sole," or "only."  *Gennock*, 2011 WL 4738320, at *4.  On this point, *BrowserCam Inc. v. Gomez, Inc.*, 2008 WL 4408053 (N.D. Cal. Sept. 26, 2008) is instructive. There, the court construed the following forum-selection clause:

> Any claim arising under or relating to this Agreement shall be governed by the internal substantive laws of the Commonwealth of Massachusetts without regard to principles of conflict of laws. ***Each party hereby agrees to***

---

[10] Even the choice-of-law provisions in the Agreement are fatally inconsistent and, therefore, invalid.  For example, section 9 of the Member Agreement (titled "Jurisdiction and Choice of Law") states, "The Agreement will be interpreted and construed in accordance with the laws of the State of Utah ***applicable to contracts to be performed therein***."  Motion, Ex. A at § 9 (emphasis added).  Contrast that section with section 13.2.3 of the P&Ps (titled Jurisdiction, Venue, and Choice of Law), which requires that "[t]he laws of the state of Utah will govern disputes involving the Agreement."  Motion, Ex. B at § 13.2.3.  Conspicuously absent from this latter choice-of-law provision is the limitation "applicable to contracts to be performed therein."  In other words, are disputes concerning the Agreement construed according to Utah law generally or are they construed according to Utah contract law when applicable, and other laws for non-contractual matters, such as those at issue here?

1

2

3

*jurisdiction and venue in the courts of the City of New York or the federal courts sitting therein,* for all disputes and litigation arising under or relating to this Agreement, and each party waives and agrees not to assert any defenses or claims relating to improper venue, *forum non conveniens,* or similar defenses or claims, relating to this Agreement.

4  *Id.* at \*1 (emphasis added).  The court concluded that the clause was permissive

5  because it "contained no language that expressly designated New York as the

6  exclusive venue."  *Id.* at \*2.  *See also WSA Distrib. Inc. v. Youghiogheny*

7  *Commc'ns Ne. LLC,* 2011 WL 13356143, at \*7 (S.D. Cal. May 27, 2011).[11]

8          Here, neither FSC #1 nor FSC #2 uses the requisite mandatory language.

9  For example, FSC #2 states that "[j]urisdiction and venue of any matter not

10  subject to arbitration will reside in any state or federal court located in Salt Lake

11  City, Utah[.]"  However, the clause does not state that jurisdiction and venue will

12  reside *only* or *exclusively* in state and federal courts in Salt Lake City, Utah.  In

13  other words, while it is clear that state and federal courts in Salt Lake City, Utah,

14  *could be* appropriate forums in which to file suit, a plain reading of the clause

15  demonstrates that they are not the only forums in which a lawsuit may be filed.

16          Similarly, FSC #1 does *not* state that "[a]ny legal action concerning the

17  Agreement will *only* or *exclusively* be brought in the state and federal courts

18  located in Salt Lake City, Utah.  Rather, like FSC #2, this clause merely indicates

19  that jurisdiction and venue could be appropriate in state and federal courts in Salt

20  Lake City, Utah.  In any event, FSC #1 and FSC #2 are ambiguous at best, and

21  because any ambiguity in a contract is construed against the drafter, FSC #1 and

22  FSC #2 must be deemed permissive, rather than mandatory.

23

24

**E.     The Forum-Selection Clauses Do Not Encompass Plaintiff's Claims.**

25          In the Ninth Circuit, whether non-contractual claims (*e.g.,* tort and statutory

26  causes of action) are subject to a forum-selection clause depends on whether

27

28  [11] *See also Waste Servs., LLC Red Oak Sanitation, Inc.,* 2008 WL 11320211, at \*2 (D. Utah July 25, 2008); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001).

resolution of the claims requires interpretation of the contract. *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016).  Here, Plaintiff has not asserted any causes of action sounding in contract, and none of Plaintiff's claims requires that the Court "interpret" the Agreement in order to adjudicate them.   Therefore, Plaintiff's claims are not subject to the Agreement's forum-selection clauses.

In this regard, this case is very similar to *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1135 (C.D. Cal. 2018) (appeal filed).  In that case, defendants operated a multilevel marketing company that distributed health and wellness products through a network of distributors, including the plaintiffs. *Id.* at 1135-36. The plaintiffs alleged that defendants established the distributorships as part of an illegal pyramid scheme, in which distributors were required to make certain payments and to recruit others to become distributors.  *Id.* at 1136-37.   The plaintiffs advanced several causes of action against defendants, including operation of an endless chain scheme, unfair and deceptive business practices, false advertising, fraudulent concealment/nondisclosure, unjust enrichment, and others. *Id.* at 1137.

As relevant here, the parties had signed an "Independent Distributor Agreement" (hereinafter, "Distributor Agreement") that generally governed the plaintiffs' distribution of the defendants' products.  *Id.* at 1138.  The Distributor Agreement contained a forum-selection clause that stated, in relevant part:

> The Distributor Agreement shall be governed exclusively by the laws of the State of Idaho, and the Distributor agrees to submit exclusively to the jurisdiction of the courts of the State of Idaho, and specifically the District Court of the Seventh Judicial District with venue in Bonneville County, for resolution of any claims or related litigation to interpret or enforce the terms of the Distributor Agreement.

*Id.*  Based on the forum-selection clause, defendants filed a motion to dismiss on the grounds of forum non conveniens, arguing that the case belongs in Idaho state court.  *Id.* at 1141. The court disagreed, finding that the

> claims arise out of alleged conduct outside of what occurred and was contemplated by that agreement, *i.e.*, Kyäni's alleged fraudulent business

1
2
3

practices, including the alleged deceptive misrepresentations it made to prospective distributors. Consequently, they are not within the scope of the forum selection clause that is the basis for the Forum Non Conveniens Motion.

4
5
6
7

*Id.* In addition, the court determined that the claims "alleged in the FAC can be adjudicated without analyzing whether the parties were in compliance with the Independent Distributor Agreement" (internal citation and quotation marks omitted). *Id.*[12]

8
9
10
11
12
13
14

Here, just as in *Yan Guo*, the claims arise out of conduct outside of what occurred and was contemplated by the Agreement, *i.e.*, Defendant's operation of an illegal pyramid scheme and other fraudulent business practices, including the deceptive misrepresentations it made to prospective distributors. In addition, Plaintiff's claims can be adjudicated without analyzing whether the parties were in compliance with the Agreement. Therefore, just like in *Yan Guo*, Plaintiff's claims are not encompassed by the Agreement's forum-selection clauses.

15
16

**F.     The Court Should Deny Defendant's Motion to Transfer Under Section 1404(a) Because the Balance of Factors Weighs in Favor of Keeping this Action in California.**

17
18
19
20
21
22

Under Section 1404(a), the Court may—in its discretion—transfer a civil action to another district "for the convenience of parties and witnesses" and "in the interest of justice." "The moving party bears the burden of showing that transfer is appropriate." *PC Specialists, Inc.*, 2010 WL 11509024 at *3. The "**defendant must make a strong showing of inconvenience to warrant**

23
24
25
26
27
28

---

[12] *See also Wang v. Life Insurance Company of the Southwest. et al.*, 4:19-cv-01150-YGR (N.D. Cal. Dec. 19, 2019) (Dkt. No. 86) (denying motion to transfer case alleging Defendants operated an illegal pyramid scheme, explaining "[t]he Court is not persuaded that the forum selection clause would encompass the tort-like claims alleged here"); *Chen v. Premier Financial Alliance, Inc., et al.*, 4:18-cv-03771-YGR (N.D. Cal. Dec. 19, 2019) (Dkt. 110) (same); *Hardy v. Advocare Int'l. L.P.*, 2010 WL 11509179, at *5 (C.D. Cal. Dec. 10, 2010) (a distributor of nutritional supplements and weight-loss products sold by the defendant, was not required to litigate intentional and negligent misrepresentation claims in the forum designated in the parties' Distributor Agreement because resolution of those claims would not "require interpretation" of that agreement, in part because "the representations identified in the Complaint are alleged to have been made . . . through websites, representatives, signs, advertising, and labeling.").

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1   **upsetting the plaintiff's choice of forum**." *Decker Coal Co. v. Commonwealth*
2   *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added); Therefore,
3   "'**[u]nless the balance of convenience is strongly in favor of the defendant,**
4   **plaintiff's choice of forum should not, or should rarely, be disturbed**." *Patriot*
5   *Sci. Corp. v. Korodi*, 2009 WL 10673013, at *3 (S.D. Cal. Sept. 10, 2009)
6   (Sammartino, J.) (internal citation omitted) (emphasis added).

7       "A motion to transfer venue under § 1404(a) requires the court to weigh
8   multiple factors in its determination whether transfer is appropriate in a particular
9   case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  As
10  demonstrated below, the balance of "private interest" and "public interest" factors
11  overwhelmingly favors keeping this action in California.[13]

12               **1.    The Private Interest Factors Favor California**
13                    **i.    Plaintiff's Choice of Forum Is Entitled to Deference**

14      Although "a plaintiff's choice of forum is often accorded less weight" in a
15  class action than in a non-class case, district courts routinely defer to the plaintiff's
16  choice of forum and accord it significant weight where the plaintiff resides in the
17  district in which the action was filed and there is no evidence of forum shopping.
18  *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1078-79 (S.D. Cal. 2011); *see also Van*
19  *Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D. Cal. 2007) (finding
20  that plaintiffs' choice of forum is entitled to deference because "[n]o class has
21  been certified, so these are currently the only plaintiffs" and "even if a nationwide
22  class were certified the named plaintiffs would still bear a fiduciary responsibility
23  to lead the class"); *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1186
24  (N.D. Cal. 2010); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 2019 WL

---

[13] For the numerous reasons explained herein, the Forum-Selection Clauses in the Agreement are unenforceable, do not encompass Plaintiff's claims, or, at the very least, are permissive.   Therefore, Defendant's analysis regarding a motion to transfer pursuant to an enforceable, mandatory forum-selection clause is misguided and should be disregarded.  *See* Motion at pp. 6-11.  Rather, the traditional § 1404(a) analysis governs.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

6482222, at *4 (C.D. Cal. July 8, 2019).

Here, Plaintiff's choice of forum is entitled to deference because she "reside[s] in this district and did not engage in forum shopping." *In re Ferrero Litig.*, 768 F. Supp. 2d at 1078-79; *see* Declaration of Lindsay Penhall ["Penhall Decl."], ¶ 3.   Accordingly, this factor weighs strongly in favor of keeping this action in California.

### ii.   The Access to Sources of Proof Factor Is Neutral

This factor focuses on the location of records and documents. *See Escobosa v. Sunbelt Commc'ns Co.*, 2009 WL 10672058, at *5 (S.D. Cal. June 25, 2009) (Sammartino, J.).   In *Escrobosa*, this Court found that this "factor is at best neutral, if not fully against transfer" where the defendants failed to establish why transferring documentary evidence to another district would "present exceptional difficulty in the instant case." *Id.*; *see also Van Slyke*, 503 F. Supp. 2d at 1362-63).

Here, the only evidence Defendant offered relating to the location of relevant records and documents is the following vague assertion: "Young Living's documents and electronically-stored information are located in Utah[.]"  Motion, Ex. E, Declaration of Lee Bowen ["Bowen Decl."], ¶ 9.   Importantly, Defendant did not identify what relevant documents it supposedly has, why they are important, or "why transferring documentary evidence to another district would 'present exceptional difficulty in the instant case.'" *Escobosa*, 2009 WL 10672058 at *5; *see also Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005) ("[T]he movant must show particularly the location, difficulty of transportation, and the importance of such records. In this case, the defendant has failed to make such a showing, instead supporting its motion with mere conclusory allegations.").

Plaintiff's records, including communications she had with other distributors, are primarily stored on her computer and mobile phone, which are

located in San Diego County.  Penhall Decl., ¶¶ 4-6, 9.  Therefore, because the parties both have records in their respective home forum, this "factor is at best neutral, if not fully against transfer." *Escobosa*, 2009 WL 10672058 at *5.

### iii.   The Witness Convenience Factors Favor California

"[C]ourts frequently state that the convenience of third-party witnesses is more important than that of party witnesses." *In re Ferrero Litig.*, 768 F. Supp. 2d at 1080.  This is because a "party may compel the testimony of its employees." *Id.*; *see Rui Chen v. Premier Fin. All., Inc.*, 2019 WL 6911263, at *3 (N.D. Cal. Dec. 19, 2019) (denying motion to transfer and finding that the location of Defendant's employee witnesses "does not favor a Georgia forum since they can be compelled to testify regardless of the forum"); *see also Noriesta*, 2019 WL 6482222, at *2.

Here, the only potentially relevant witnesses Defendant has identified are its employees.  *See* Bowen Decl. at ¶¶ 5-8.  However, any potential inconvenience to Defendant's employees is accorded little weight because they can be compelled to testify "regardless of the forum in which the case is litigated." *Noriesta*, 2019 WL 6482222 at *2.  In addition, Defendant does not describe "the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara*, 390 F. Supp. 2d at 963.  Nor does Defendant specify which employee witnesses would likely be called as trial witnesses.  *See Van Slyke*, 503 F. Supp. 2d at 1364 ("'Likely to be called as a witness at trial' is the main focus. The defense list does not tell us which is which.").  Nevertheless, to the extent there would be any inconvenience to Defendant by having this action proceed in California, such inconvenience can be mitigated by deposing Defendant's employees in Utah.  *Noriesta*, 2019 WL 6482222, at *3.

On the other hand, Plaintiff's partner, Juan Contreras, is the only material *non-party* witness who has been identified.  *See* Penhall Decl., ¶ 8.  Mr. Contreras resides in San Diego County and witnessed Plaintiff's unsuccessful attempts to

grow her Young Living business.  *Id.*  He participated in events Plaintiff sponsored to promote Young Living products and to attempt to recruit new distributors.  *Id.*

Finally, the fact that Plaintiff has asserted a claim under California Business & Professions Code section 17200 on behalf of a California subclass weighs against transfer of this case to Utah.  *See Van Slyke*, 503 F. Supp. 2d at 1364 ("[T]he trial of the Section 17200 claim would likely involve a state-wide class of California residents. To illustrate the 'unfair' impact of the challenged practices, California consumers would likely be called to tell their stories. This would be in addition to the California named plaintiff. For these witnesses, California would be a more convenient forum.").  Therefore, because the "Court accords more weight to the inconvenience of non-party witnesses," as well as to the "California consumers [who] would likely be called to tell their stories," this factor favors California. *Noriesta*, 2019 WL 6482222, at *2; *Van Slyke*, 503 F. Supp. 2d at 1364.

### iv.   The Location of the Agreements Factor Favors California

This factor considers "the location where the agreements were negotiated and executed."  *PC Specialists, Inc.*, 2010 WL 11509024 at *3.  Any documentation from or concerning Young Living was received and reviewed by Plaintiff using her computer and/or mobile phone in San Diego.  *See* Penhall Decl., ¶ 6.  Accordingly, this factor weighs against transfer.

### v.   The Governing Law Factor Favors California

Simply put, a "California district court is more familiar with California law than district courts in other states."  *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081; *see also PC Specialists,* 2010 WL 11509024 at *5 (finding that "a judge in the District of Colorado is going to be less familiar with the law underlying Plaintiff's California state law claims than this Court); *see Rui Chen*, 2019 WL 6911263 at

*3 (The fact that a "majority of the claims here are brought under California statutes with which this Court likely will be more familiar" weighed in favor of keeping the action in California).

Plaintiff's First Amended Complaint asserts six (6) causes of action, all but one of which arise solely under California law.  Therefore, "a judge in the District of [Utah] is going to be less familiar with the law underlying Plaintiff's California state law claims than this Court."  *PC Specialists,* 2010 WL 11509024 at *5. Accordingly, this factor weighs against transfer.

### vi.    The Forum Contacts Factors Favor California

These factors consider "the parties' contacts with the forum" and "the contacts relating to the plaintiff's cause of action."  *Patriot Sci. Corp.,* 2009 WL 10673013 at *4; *see also In re Ferrero Litig.*, 768 F. Supp. 2d at 1079-80.  Here, Plaintiff has significant contacts within this district.  She (1) resides in San Diego County; (2) works in San Diego County; (3) researched Young Living online and reviewed their promotional materials using her computer and mobile phone in San Diego County; (4) received and reviewed certain documentation from Young Living using her computer and/or mobile phone in San Diego County; (5) purchased Young Living products using her computer in San Diego County; (6) received Young Living products in San Diego County; (7) sponsored events to promote Young Living products and recruit new distributors in San Diego County; (8) advertised Young Living products at her place of employment in San Diego County; and (9) Plaintiff's partner, Juan Contreras, witnessed her unsuccessful efforts to grow her Young Living business by attempting to recruit new distributors in San Diego County.  *See* Penhall Decl., ¶ 9.

Defendant also has significant contacts with this forum.  For example, Defendant sells a substantial amount of its essential oil products in California and a significant number of its top distributors—the "Royal Crown Diamond Leaders"—are located in California (and none in Utah).  *See* Declaration of

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

Christopher D. Moon ["Moon Decl."], ¶ 2; *see In re Ferrero Litig.*, 768 F. Supp. 2d at 1079-80 (finding that the forum contacts factor weighed against transfer because, in part, the defendant sold the subject product throughout California); *see also Hendricks v. StarKist Co.*, 2014 WL 1245880, at *4 (N.D. Cal. Mar. 25, 2014).   Accordingly, this factor weighs in favor of keeping this action in California.

### vii.   The Litigation Costs Factor Favors California

"In deciding whether to transfer, the Court must be careful to avoid a transfer that 'would merely shift rather than eliminate' the inconvenience of costs. *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081 (internal citations omitted). Moreover, "'corporations are better-equipped than individuals to absorb increased litigation costs.'" *Id*.   Here, a transfer would simply "shift rather than eliminate" the inconvenience of costs.   Moreover, as a large, multi-billion-dollar company, Defendant is better able to "absorb increased litigation costs."   In addition, Defendant already has counsel located in California.   If this case were to be transferred to Utah, Plaintiff would be forced to retain local counsel.   This, along with having to travel to Utah for court proceedings, would be a financial hardship for Plaintiff.   Accordingly, this factor also clearly weighs against transfer.

### 2.   The Public Interest Factors Favor California

### i.   The Court Congestion Factor Weighs in Favor of Keeping This Action in California

Defendant concedes that this factor weighs against transfer.   Motion at p. 7. Indeed, Defendant acknowledges that civil actions proceed to trial far more quickly here than in Utah.   However, in an effort to show that Utah is less congested than it actually is, Defendant states that the time to trial in Utah "has **averaged** 37.96 months over the last five years." *Id.* at p. 7, n. 5 (emphasis added). On the other hand, Defendant notes that the "current **median** time from filing to trial in this District is 27.7 months, but has been high as 36.2 months within the

last five years." *Id.* (emphasis added).    Defendant attempts to cherry-pick favorable statistics by comparing **averages** to current **median** time but failed to note that the last reported statistic for time from filing to trial in Utah is actually **49.5 months**—nearly double what it is in this District.    Accordingly, this factor weighs heavily against transfer and in favor of keeping this action in California.

### ii.    The Local Interest and Burden on Citizen Factors Favors California

These two factors consider "the local interest in having localized controversies decided at home" and "the unfairness of burdening citizens in an unrelated forum with jury duty." *PC Specialists, Inc.*, 2010 WL 11509024 at *3; *Jones*, 211 F.3d at 498-99.  California has a far greater interest in adjudicating this dispute than Utah.  First, all but one of Plaintiff's six causes of action arise solely under California law, which will apply to the California subclass exclusively.  *See Van Slyke*, 503 F. Supp. 2d at 1365-66 (finding that the local interest factor weighs against transfer because "100% of a state-wide class for a Section 17200 claim would reside in California").    Second, Plaintiff is a citizen of California and resides in this District and, therefore, California clearly has an interest in addressing harm to one of its citizens.  *See id.* (finding that California has an interest in "ensuring efficacious remedies, such as class actions, for its citizens" and, therefore, "has a greater interest in adjudicating this action").    Finally, California is the most populous state with approximately 12% of the U.S. population.  *See* Moon Decl. ¶ 2.  On the other hand, Utah has approximately 1% of the U.S. population.  *See* Moon Decl. ¶ 3.  Therefore, it stands to reason that California has a much larger percentage of the putative class than Utah. Accordingly, these factors weigh in favor of keeping this action in California.

### iii.    The Governing Law Factor Favors California

"A diversity case should be litigated 'in a forum that is at home with the law that must govern the action[.]'"  *Escobosa*, 2009 WL 10672058, at *5 (internal

1  citation omitted). In addition, when a "'federal court sitting in diversity hears
2  state law claims, the conflicts laws of the forum state are used to determine which
3  state's substantive law applies.'" *Id*. (internal citation omitted). Further,
4  California's choice-of-law rules apply whether or not this action remains here.
5  *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1191
6  (S.D. Cal. 2007).

7  Because California's choice-of-law rules would govern even if this case
8  were to be transferred, this fact clearly weighs in favor keeping this action in
9  California. *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1191 (finding that "this
10  factor weighs against transfer" because "[t]his Court is more familiar with
11  California's choice-of-law rules than EDPA"); *Escobosa*, 2009 WL 10672058 at
12  *4 ("Though it is uncertain what substantive law will be applied in this action, that
13  California choice-of-law rules will be used to determine which substantive law
14  applies to this action does not support transfer to a court outside of California.").
15  The fact that there is a California subclass and all but one of Plaintiff's causes of
16  action are brought exclusively under California law also weighs against transfer.

17  Defendant does not disagree. Rather, Defendant's only argument
18  concerning why this factor supports transfer to Utah is based on the faulty premise
19  that the parties are subject to a contractual choice-of-law clause providing for the
20  application of Utah law. As discussed *supra*, the purported contractual choice-of-
21  law provisions are invalid and, therefore, Defendant's position is without merit.
22  Accordingly, this factor favors keeping this action in California.

23  In sum, Defendant's Motion to Transfer must be denied because Defendant
24  has failed to make a "strong showing of inconvenience to warrant upsetting the
25  plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. Indeed, to grant
26  Defendant's Motion would be tantamount to finding that, in all cases, corporate
27  defendants are entitled to their preferred venue any time they are sued outside of
28  their home forum. However, not only would that be contrary to applicable federal

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TRANSFER

1  | law but it would be wholly unfair to plaintiffs.  *Escobosa*, 2009 WL 10672058 at

2  | *4 ("To give precedence to the wishes of Defendants without due cause would in

3  | effect punish Plaintiff for suing individuals not in her District, which the Court

4  | declines to do.").  Accordingly, Defendant's Motion to Transfer should be denied.

5  | **IV.   CONCLUSION**

6  | In light of the foregoing, Defendant's Motion should be denied in its

7  | entirety.

8  |

9  | Dated:  March 3, 2020                    **MOON LAW APC**

10 |                                              By:

11 |                                                   /s/ Kevin O. Moon
   |                                                   CHRISTOPHER D. MOON

12 |                                                   KEVIN O. MOON

13 |                                                   Attorneys for Plaintiff

-24-